**NATIONAL CITY BANK, Appellee,**

v.

**GLADIN et al., Appellants.**

[Cite as *Natl. City Bank v. Gladin* (1995), 102 Ohio App.3d 119.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 94–G–1875.

Decided March 27, 1995.

*Alan H. Weinberg,* for appellee.

*A.M. Psenicka,* for appellants.

JOSEPH E. MAHONEY, Judge.

On October 10, 1989, appellants, Joseph M. and Shirley L. Gladin, entered into a lease agreement with appellee, National City Bank, for the lease of a 1990 Mercury Sable automobile. The transaction was conducted at Lawson Ford Mercury in Geauga County, Ohio. The term of the lease was for sixty months. On April 23, 1992, approximately halfway through the lease, appellants voluntarily surrendered the vehicle to appellee. On June 4, 1992, the vehicle was sold at auction for $8,100. Appellee subsequently notified appellants that a deficiency balance of $6,706.16 remained.

On October 21, 1993, appellee filed a complaint in Geauga County Common Pleas Court against appellants seeking recovery of the deficiency balance on the leased vehicle, in addition to the balance owed on a promissory note involving the sale of a boat. The promissory note is not part of the present appeal. Appellants filed an answer and counterclaim on January 19, 1994.

On June 29, 1994, the trial court granted summary judgment in favor of appellee in the amount of $6,706.16 on the claim involving the leased vehicle. Judgment was also granted in appellee's favor on appellants' counterclaim.

Appellants timely filed a notice of appeal with three assignments of error.

In the first assignment of error, appellants contend that the contract was illegal and, therefore, unenforceable. Specifically, appellants submit that appellee was not licensed as a motor vehicle leasing dealer in Geauga County, where the lease agreement was executed. Thus, since appellee was illegally operating in Geauga County, it cannot seek protection from the courts to enforce an illegal contract.

Appellants rely on R.C. 4517.06, which provides:

"Each person applying for a motor vehicle leasing dealer's license shall annually, before the first day of April, make out and deliver to the registrar of motor vehicles, upon a blank to be furnished by the registrar for that purpose, a separate application for license for each county in which the business of leasing motor vehicles, as described in division (M) of section 4517.01 of the Revised Code, is to be conducted. The application shall be in the form prescribed by the registrar, shall be signed and sworn to by the applicant, and in addition to such other information as is required by the registrar, shall include the information specified in divisions (A) to (H) of section 4517.04 of the Revised Code. The application shall be accompanied by a photograph, as prescribed by the registrar, of each place of business operated, or to be operated, by the applicant."

In support of their brief in opposition to summary judgment, appellants attached an affidavit executed by their counsel, A.M. Psenicka, in which he stated that he had telephoned the Ohio Bureau of Motor Vehicles, Dealer Licensing Department, and discovered that appellee did not have a license to conduct automobile leasing in Geauga County.

R.C. 4517.01(M) defines "motor vehicle leasing dealer" as "any person engaged in the business of regularly making available, offering to make available, or arranging for another person to use a motor vehicle pursuant to a bailment, lease or other contractual arrangement under which a charge is made for its use at a periodic rate for a term of thirty days or more, and title to the motor vehicle is in a person other than the user, but does not mean a manufacturer or its affiliate leasing to its employees or to dealers."

There is apparently no case law on this topic; however, it is unlikely that the legislature intended the licensing requirements set forth in R.C. 4517.06 to apply to financial institutions such as appellee. When the statute defines "motor vehicle leasing dealer" as any person engaged in the business of regularly making available, offering to make available, or arranging for another person to use a motor vehicle pursuant to a lease, it is apparent that the legislature is referring to an automobile dealership which is involved in arranging leases for vehicles rather than the financial institution that actually executes the lease with the customer.

The word "dealer" itself is defined in R.C. 4501.01(W) as including "all persons, firms, and corporations regularly engaged in the business of manufacturing, selling, displaying, offering for sale, or dealing in motor vehicles, at an established place of business which is used exclusively for the purpose of manufacturing, selling, displaying, offering for sale, or dealing in motor vehicles. * * *"

It is clear that a bank does not fall within this definition.

Based upon the foregoing analysis, it was not necessary for appellee to comply with R.C. 4517.06. Thus, the contract was not illegal.

Appellants' first assignment of error is without merit.

■ In the second assignment of error, appellants assert that the trial court erred in permitting appellee to assign a residual value to the vehicle without first giving appellants notice of that value so that they could obtain their own appraisal.

Appellants rely on Section 12(C) of the lease agreement, which provides:

"To the extent that these charges take into account the value of the vehicle at the end of the lease term, if you disagree with the value we assign to the vehicle, you may obtain at your own expense, from an independent third party agreeable to both of us, a professional appraisal of the retail value of the leased vehicle which could be realized at sale. The appraised value shall then be used as that actual value."

It is appellants' contention that they were not given notice of appellee's determination of appraised residual value until after the vehicle was sold at auction. Thus, their contractual right to have an independent appraisal performed pursuant to Section 12(C) was foreclosed by the time they were first notified of appellee's appraised value.

A review of the record reveals that appellants never raised this argument in the trial court. The Supreme Court of Ohio has held:

"An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. (Paragraph one of the syllabus of *State v. Glaros,* 170 Ohio St. 471 [11 O.O.2d 215, 166 N.E.2d 379], approved and followed.)" *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus.

Accordingly, appellants have waived this argument and may not raise it on appeal.

Appellants' second assignment of error is without merit.

■ In the third assignment of error, appellants maintain that the trial court erred in granting summary judgment as there existed a genuine issue regarding material facts.

The Supreme Court of Ohio has held:

"It is axiomatic that a motion for summary judgment may only be granted where there exists no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law. Civ.R. 56(C). Moreover, summary judgment is inappropriate unless it appears from the evidence that reasonable minds could come to but one conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C). Furthermore, in reviewing a motion for summary judgment, this court, as other courts, must construe the evidence in a light most favorable to the party opposing the motion. * * * Therefore, absent an affirmative showing by the moving party, appellees herein, that no genuine issues exist as to any material fact, * * * and that such party is entitled to judgment as a matter of law, no summary judgment may be granted." (Citations omitted.) *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 46–47, 517 N.E.2d 904, 906–907.

Appellants claim that appellee was allowed to charge ten percent of the total monthly payments remaining rather than the contractual rate of five percent as provided in Section 12(B) of the lease agreement. Section 12(B) provides:

"We may terminate this lease before the end of the lease term under the following conditions: At our option upon the happening of an event of default your liability computed as follows: Five (5%) of the total monthly payments remaining plus monthly rental times the number of months remaining under the lease, plus any past due monthly payment, late charges, unamortized portion of annual prepaid fees and taxes, and other amount due, but unpaid under the lease."

It is clear from a review of the calculation included in the affidavit attached to appellee's motion for summary judgment that appellants have merely misread appellee's notations. Simple arithmetic supports the conclusion that appellee only charged five percent of the total monthly payments remaining as an early termination fee. The total monthly payments remaining totaled $7,776.44. The early termination fee totaled $388.82, which is five percent of $7,776.44. Thus, appellee's calculations were in accordance with the contract terms.

Additionally, appellants argue that the trial court wrongfully allowed appellee to collect a repossession expense of $413 despite the fact that there was no repossession involved but, rather, a voluntary surrender.

While it is undisputed that appellee did not have repossession expenses involving the actual recovery of the vehicle from appellants' possession, it is also undisputed that appellee incurred impound and storage costs covering a forty-two-day period between the time that appellants surrendered the vehicle and the time that it was sold at auction. Clearly, these charges were properly attributable to appellants' default under the terms of the lease.

Hence, the trial court did not err in granting summary judgment in favor of appellee.

Appellant's third assignment of error is without merit.

Based upon the foregoing analysis, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and NADER, J., concur.